You'll hear argument next in Case 21-1170, Ciminelli v. United States. Mr. Dreeben. Thank you, Mr. Chief Justice, and may it please the Court. For decades, the Second Circuit has applied an invalid theory of wire fraud called the right-to-control doctrine. The government now agrees. It concedes that the right-to-control doctrine, quote, could lead to overbroad results that would expand property fraud beyond the definition of common law and as Congress would have understood it. Instead, the government offers a new and even broader theory of fraud, fraudulent inducement of a transaction. Yet in the 150 years since the mail fraud statute was enacted, no case of this Court has embraced that theory. This Court should not do so now. First, the Court should not entertain the theory at all. The theory was not the basis for the jury verdict. This Court has held that it can, quote, not affirm a criminal conviction on the basis of a theory not presented to the jury. Second, the government not only forfeited but intentionally abandoned a fraud theory treating the contract funds as property. The government superseded the indictment to drop that theory. It proceeded solely on the right to control, and it used that theory to exclude critical defense evidence. Third, the new theory is wrong. The theory dispenses with a quintessential requirement of common law fraud, harm to a traditional property interest if the scheme succeeds. It would radically expand federal law, violate federalism principles, and end run limits on honest services fraud. And the theory's breadth requires ad hoc patches that contradict black-letter law and that even the government does not fully endorse. Instead of wading into those issues, the Court should resolve the question presented, reject the right to control theory in reverse, and because the government has offered no other theory of property fraud below, the Court should direct entry of an acquittal. I welcome the Court's questions. To begin with the right to control theory, which is the question presented, the Second Circuit crafted that theory based on nontraditional ideas drawn from a set of cases that did not examine fundamental questions of what property means under the property fraud statutes. Those statutes incorporate the common law, as this Court has repeatedly held. So, Mr. Dreeben, let's say that you win this case because the government presented the right to control as a property interest and now is not even defending that. So let's say you win. But you are saying that the government doesn't even have it right now. And I guess I wonder why that's the case. A billion dollars is a lot of property. And if you take what the government is now saying, frame it as this was an effort to obtain money, the most classic form of property, through a fraudulent scheme. So why couldn't, I know it didn't, but why couldn't the government have framed its case in that way? So, Justice Kagan, the fundamental reason why that cannot be a valid basis for property fraud is it was not the meaning of common law fraud at the time that Congress enacted the mail fraud statute and that assimilated those common law concepts. Fraud requires harm to a traditional property interest. It is usually, in government-prosecuted cases, pecuniary harm. For example, the government says, this could be an overcharging case. It wasn't, but if the government wanted to prosecute pecuniary fraud as an overcharging case, that fits within common law fraud. It also fits within common law fraud if the victim is deprived of another... So if I understand you correctly, you're saying that, in addition, the government has to prove, in addition to proving that there was a scheme to obtain property, a scheme to obtain money, the government also has to prove that on the other side there was economic loss. And I guess that strikes me as just a different issue, an orthogonal issue, from the one that really has been raised in this case, which is what does obtaining property look like? Is it enough to say the fact that there was interference with a right of control, that's not property. But the fact that you're trying to get contract money, that is property. And then as to all the other elements of the prosecution, whether it's what's the right materiality standard, whether it's do you have to show economic loss to the defrauded party, as to all those elements, I mean, they're just not in this case at all. Didn't we basically take this case to decide was there a scheme to obtain property here? Well, no, there wasn't, because the government thought about it as the right to control. But yes, if the government had said they were trying to obtain a billion dollars, that would have been sufficient. So, Justice Kagan, I completely agree with the first part of what you said. This case is about the right to control and whether the right to control is a cognizable property interest that can be obtained. I would part company on whether the government can just shift to a pure fraudulent inducement theory, either in this case or as a general matter. I was answering your question about whether it is a valid theory of fraud or whether there does need to be some kind of pecuniary harm, harm to a distinctive recognized property interest of another kind. We say yes. The government says no. That was not an argument that the government made below. It's not something on which this court can look to a wealth of mail fraud cases that analyze the question. So we don't think that it's in this case. And to that extent, I agree with you. It is orthogonal. It's not presented. It's an improper issue before the court. If the court were to reach it, it would help. Can I stop you there? So if we could just write an opinion saying the right to control theory is no good for the reasons you've stated, and even the government acknowledges, and that's the end of it. That would be fine with us, Justice Kavanaugh. We don't have to resolve it anymore. You do not accept that. You want us to, but we don't have to, correct, to pick up on Justice Kagan's question. The court should direct an entry of acquittal because the only property interest that the government offered below isn't a property interest. The proof that corresponds to the jury instructions and the theory does not establish the elements of fraud. That should be the end of the case. The court could write a short opinion explaining that the right to control doesn't have common law provenance. It doesn't satisfy the elements of the mail and wire fraud statutes. In this case, that's the only theory that the government can properly rely on in order to sustain the prosecution. There was no proof of a traditional property interest. Therefore, you enter a judgment of appeal. But can't we just let the Second Circuit figure that out? Well, Justice Barrett, the reason why I don't think that it's an appropriate issue for the Second Circuit to get on remand is this court's repeated statements in cases like Dunn, McCormick, and specifically Chiarella and McNally itself, that the court cannot affirm a criminal conviction on the basis of a theory not presented to the jury. But there's a gulf between not affirming and acquitting. I mean, we could not affirm and send it back, and then maybe the Second Circuit says there has to be a new trial on whatever other theory the government has. Well, Justice Jackson, that would only make sense if it were permissible under the rules of procedure and the Constitution for the government to get that second bite at the apple. And in a case like Chiarella, which is pretty much on all fours with this case, the court simply entered an opinion that said it reversed. It didn't remand for anything else. Chiarella involved the financial printer who was charged and convicted of defrauding innocent market traders based on information that he stole from the print shop about upcoming financial transactions. The court said, that's not a valid theory of insider trading because it doesn't involve fraud. The government came back and said, yes, but he stole the information from the print shop in breach of an established fiduciary duty and agency relationship, and that constitutes everything you need for an insider trading violation, which, by the way, this court later held in United States v. O'Hagan. But the court said, we cannot affirm a criminal conviction on the basis of a theory not presented to the jury, and the judgment was reversed, and Chiarella went free. And that is the same, I think, result that should occur in a case like this one. The government's new theory, beyond all of its other flaws, was not charged in the indictment. The government is actually asking the court to entertain in a theory that would create a constructive amendment of the indictment. But you don't charge theories. I mean, the government charged the statute, violation of the wire fraud statute, and it went to trial on a particular theory as to how that was accomplished, but I think the indictment is not defective, is it? Yeah, the indictment actually is defective, Justice Jackson, because it's not enough, at least in a case like this where the government says what the property interest is. There is a theory of the indictment, and the government has to prove the theory that it charged, not a different theory. And that is particularly true in this case because the indictment specifically charges the right to control its assets as the property interest, and that was not an accident. The government originally had an indictment in which it did charge that the ultimate state-awarded contracts were the property interest, the same thing that my friend now says is the property interest. But there was a case in the Southern District of New York called United States v. Davis in which the government had gone to trial on a similar indictment that charged a contract as the property interest, and then it tried to save the conviction by pointing to the right to control theory, which is very vast and nebulous. And the district court said you cannot do that, that would be a constructive amendment of the indictment. So what did the government do? It went back and it changed from the first superseding indictment to the second superseding indictment to delete contract funds as property and to substitute the right to control. And you can see that most clearly in a red line document that the government filed with the court, which is docket entry 319-2, which contains a red line of the differences between the two indictments. And you can see that the government red-lined out that the scheme to defraud defrauded Fort Schuyler of, now I'm going to read the stricken language, an award of significant taxpayer-funded development contracts. And it substituted in defrauded Fort Schuyler of its right to control its assets and thereby exposed Fort Schuyler to the risk of economic harm. So the government didn't just not charge this theory or not charge any theory. It put the defendants on notice, it put the court on notice, and it repeatedly relied on right to control rather than a property fraud conventional theory to exclude critical defense evidence. And I think when you have all of those features, whether it adds up to a formal waiver or the kind of abandonment of a new theory that should foreclose the government from getting its second bite at the apple, I think it adds up to an acquittal. Well, whether there was a constructive amendment to the indictment is a complicated question and it wasn't one that I understood us to take. But putting that aside, if in a case there is no objection to a jury instruction, it turns out that the jury instruction is erroneous, maybe even omits an essential element of the offense. But the evidence is sufficient to support, or arguably sufficient to support conviction under a proper interpretation of the statute. And the argument that's made on appeal is that the defendant is entitled to a judgment of acquittal. Is that person entitled to a judgment of acquittal? Justice Alito, ordinarily not. But that would presuppose a situation in which the government proceeded on its theory and didn't actually abandon that theory in prior litigation so that as a matter of what you call it, forfeiture, waiver, invited error, whatever you want to call it, the government forwent the theory that it is now urging upon the court. And so once that is out of the case, I think you have to ask the question whether the evidence that was introduced to prove the crime charged satisfied the elements of that crime. And the government can't come up on appeal as it has done here for the first time in this court and said, since this is a sufficiency case, we get to completely reinvent the theory. We get to substitute in a new one for the defective one that the Second Circuit used. And the only question that we ask is whether the evidence was sufficient under that theory. And we can ask the court to announce this new theory for the first time in this case. If that were true, the government would have been able to defend the insider trading conviction in Chiarella by saying, decide the misappropriation doctrine. After all, it turned out to be a valid theory, and there were a couple of justices in the dissent who thought it was a valid theory even in that case. But the court said, no, you cannot affirm a criminal conviction on a basis of a theory not given to the jury. And even if that doesn't hold true in every single case, and I think Justice Alito, Nader, and cases like that suggest that there can be harmless error, it should hold true in a case like this where the government's new theory emerges only in its merits briefing in this court and was abandoned by amendments to the indictment. Justice Alito's question assumed a jury waiver, a jury instruction waiver. Did you waive here? I don't think we waived anything. We preserved all the way through our objection that the right to control doctrine is not a valid theory of fraud. That's preserved at page 103 of the JA. The Second Circuit dropped a footnote and said the defendants challenged this theory. We don't have to reach it because it's settled Second Circuit law. And it used that theory to analyze the sufficiency of the evidence, and that's the theory, the only theory, on which the Second Circuit found that the evidence is sufficient. So you say that preserved your jury instruction. That's correct. Well, I want to be clear, Justice Sotomayor. We're not talking about the jury instructions on our theory of the argument. What we are talking about is the sufficiency of the evidence and the legal standard that the Second Circuit used to find the evidence sufficient. It used an incorrect standard based on right to control. That's the only theory that it used to examine the sufficiency of the evidence. Because the evidence is not sufficient to prove property under that theory, an acquittal is mandated. And the government's tangent has brought up things that require me to talk about the indictment and the jury instructions because it's not, Justice Alito, that we're asking you to resolve a constructive amendment theory. It's that the government's theory would create a constructive amendment. It would change the language of the indictment back to the S-1 indictment after having dropped that and put in the S-2 indictment a right to control theory. And we're looking at the jury instructions only to answer the question, did the jury resolve the question that the government is now putting to it under its fraudulent inducement theory? And the answer to that is clearly no. The property differs. The government won't dispute that. It migrates over to become the contract funds at the end of the day. The government offers a new materiality theory that says that the misrepresentations have to go to the essence of the bargain. There's nothing in the jury instructions that contain that amorphous characteristic anyway. The jury didn't decide that. And the government offers a slant on by means of that the acquisition of the property or the obtaining of the property has to be by means of the misrepresentation that borrows from this court's decision in Laughrin to say that it has the natural tendency to induce the person to part with property. That also was not in the jury instructions. And critically, the defense has defenses on both of those issues that it was not given the chance to litigate because that was not the theory of the case that the government went forward on below. On the essence of the property, the essence of the bargain requirement that the government now offers, it is highly significant that at page 47 of the government's brief, the government says that a fair exchange can negate the materiality under its essence of the bargain theory of a misrepresentation. What if accurate information is the essence of the bargain? Now, I know you don't think we need to get into this, and you may be right about that, but I just want to draw on your knowledge of criminal law and your understanding of common law fraud. So take this example. Suppose someone hires an agent, enters into a contract with an agency to find, let's say, a nanny for their children or a caregiver for an older person, and the agency promises that they're going to do a thorough check of these individuals. They are going to contact prior employers and get references and do a criminal background check. In fact, they do none of those things, but it turns out that the nanny or the caregiver actually does a decent job. Is there not fraud there? There may be, Justice Alito, and it would turn on whether the government chooses to show pecuniary laws. Overcharging, overpaying for services that were not performed, that is the kind of conventional fraud case that the government points to in the Finazzo case. Yes, but what if there is no – they don't try to prove that they paid too much, but they paid for a person who was unproven, and what they wanted was somebody who was a proven commodity. Certainly they're going to think, we were defrauded. We were exposed to a risk that we didn't want to undertake, and we paid money for that. That's just why we paid the money. Why isn't that fraud? They certainly were deceived, and the government certainly can try to show that there would be pecuniary laws associated with that, that they paid for services that they didn't get, which is a very conventional type of fraud claim. If all there is is deceit and the contract actually was a fair exchange and the employee was fully competent, capable, certified, qualified, then it wouldn't be common law fraud. It might be some other crime that covers deception. It might be a civil case that would entitle the victim to rescission. The civil rules have different criteria and requirements than the criminal law, and it might be a violation of some other criminal statute. But the fraud law at common law always looked to some kind of a loss, be it the pecuniary or loss of specific property that you set out to buy or something else that could be monetized because, after all, fraud law originated in protecting people's property rights, and this court in McNally said it protected against being wronged in your property rights, and it didn't mean conventional fraudulent inducement, which is grist for the mill in a thousand civil cases that would all become fit cases for criminal fraud if the government's new and vastly enlarged fraudulent inducement theory is adopted. So while the victim may have a subjective sense of being wronged, that does not mean that it fits within the parameters of what has always been required for a fraud scheme up till the government's current submission, which is some sort of a scheme to deceive someone for the purpose of obtaining property in a way that would produce a pecuniary loss or some other harm to a traditional property. Mr. Dreeben, let's say that we don't want to say that this statute protects just common law Blackstonian property, as you propose in your brief. Could we decide that the right to control assets isn't a sufficient basis for the prosecution another way, maybe by saying that the government is conflating the materiality element with the intent to defraud element and that way not have to decide cases that aren't before us about other bundles, sticks in the bundle of property? Well, Justice Barrett, I think that there are a number of ways to conclude that the right to control theory is invalid. Your Honor pointed to one. It tends to merge different elements, not only materiality, but the way that the Second Circuit has described it. It also subsumes intent to defraud. And by collapsing all those elements, it violates core requirements of the statute. It also tends to run aground because it infringes on turf that's covered by Skilling and McNally and would allow the government to prosecute a variety of kinds of things through the guise of calling them property fraud when it cannot do so under honest services. And I'm not saying that the two are hermetically sealed worlds, but the way the government has treated right to control in the Second Circuit, it fills in the blanks where the honest services doctrine got cut off by McNally and not reinstated by 1346. So the court could also say Congress reinstated certain intangible rights in the honest services amendment, section 1346. The right to control assets is not one of them, and therefore it does not qualify as property for purposes of the property fraud statute. And you don't see any problem with any of those routes? I think they all cumulatively reinforce each other, and the court may wish to take this opportunity to say what it has already said in Cleveland and in Carpenter, which is that the wire fraud and mail fraud statutes protect traditional property interests. It does not have to map what every traditional property interest is today. This is not a case, for example, about intellectual property. It's about a made-up right to information that bears on an economic decision. That has no roots in the common law. I think the court can at least say that without prejudicing the government in arguing for other kinds of property, whether exotic or traditional. What do you say about the statement in Shaw that bank fraud requires no actual loss or intent to cause loss? So I think that statement is entirely correct, and if you look at the facts of Shaw, it involved someone who stole somebody's credentials to their account and used it to extract money from the bank. And the defense was, hey, I did not want to harm the bank. I was just trying to defraud the customer. And beyond that, the bank isn't going to lose any money because there are all these banking regulations that allow it to recoup money from the customer and from other banks. And what Justice Breyer was saying in that opinion was that's not a defense. The fact that you think that someday the bank will not be made whole is not a defense to fraud, just as it would not be a defense to fraud if I went to a bank, totally misrepresented my income, got a loan at an interest rate that I never would have gotten if I gave my true income, and I said, but it doesn't really matter because I'm going to come up with the money and pay them back. The fact that you think everything will turn out OK doesn't obviate the finding of a scheme to defraud, and I don't think Justice Breyer was doing anything other than that in that opinion. Justice Thomas? Justice Sotomayor? I am a little confused. Assume that I want to enter a transaction and the other side says, I won't do it if you have been in cahoots with someone who's part of this decision-making. Isn't the essence of my bargain that I gave you this contract and you took my money? You performed services, but I wouldn't have entered this contract with you. It's very clear. I've said it to you. And you would have an excellent action in breach of contract, Justice Sotomayor. You would have potentially... Why isn't that false pretenses, which is what the argument... You call it fraudulent inducement, but the government calls it a common law false pretenses case. I think the government calls it fraudulent inducement, and we and the government have disagreed on what fraudulent pretenses at common law required. We think that it does require some form of a loss. The government has countered with citations that it thinks supports the opposite. One of the problems with this court trying to resolve complicated issues of common law when the parties only raise the issue in the respondent's brief and then reply briefs is that the court doesn't have a full foundation of the literally hundreds of common law cases that address this. But our view would be there might be some other offense. There might be some civil action, almost certainly would. But the requisites for a criminal conviction, and in this case, one that carries 20 years in prison, are not met for every misstatement in a contract, every false statement that the government... I didn't say every false statement or misstatement. The material one. True, and the government would substitute yet a different materiality standard from the one that this court has said in an effort to limit the reach of its fraudulent inducement theory because taken at face value, there are hundreds of cases that are litigated in state courts every year on a fraudulent inducement theory. And under the government's theory, they are all federal crimes, at least if the government can show its new essence of the bargain requirement and its by means of requirement. And that has never been the way that fraud prosecutions have previously proceeded. Every single case in this court is either a something-for-nothing fraud or something... But we're back to we shouldn't get into this. I would entirely encourage the court not to get into it and to decide instead the question presented. Justice Kagan. Justice Gorsuch. Justice Catherine. Justice Stanton. Thank you, counsel. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the court. If I could just start with two main points, one about the scope of property fraud generally and the other about how the right-to-control doctrine fits into that. It's always been property fraud to have fraudulent inducement, like in this case, where the victim is tricked into paying for something fundamentally different from what he bargained for. Both in their reply brief at footnote two and just now, petitioner acknowledges that receiving specific property different from what the victim expected, like a horse with a different name, even if it has equal value, can be fraud. To the extent there's daylight between the parties about the substance of what property fraud covers, I think it goes to cases of what I might call pedigree fraud, where there's a lie about the certification of property, or important to us would be a case where, for example, someone lies about their eligibility for a veteran's preference in contracting. And we would say that that's fraud, and it's always been fraud at common law. And that's exactly the paradigm that this case, in which petitioner and the other defendants scheme to obtain $750 million in Fort Schorler's funds by rigging the bidding process and lying about it, fits. In maintaining that it fits, we're not abandoning the jury's findings under the right-to-control theory. We're explaining how they map onto the more straightforward and traditional elements of property fraud as they have always been understood. And that's, I think, sufficient to confirm that the conviction should be affirmed, because I don't really understand, on the facts of this case and on the indictment that was submitted and went to the jury, how the jury found any difference between the right-to-control, the $750 million, and the $750 million itself. I think... Mr. Fagan, are you abandoning the Second Circuit's control theory? Well, Your Honor, we do think it... Let me make a few points about that, just to directly answer your question. We would be fine with the court explaining that that's not the right way for the Second Circuit to be going about thinking about these cases. The second point I would make is I think the Second Circuit has gotten a little bit of a bad rap here. I think it's understandable how it got here. Petitioner, at pages 22 to 23 of his brief and pages 8 to 9 of his reply brief, acknowledges that the use of property can be property. This court, in recent cases like Kelly v. Shaw, has referred to it as property. And this court nodded to the idea of a right-to-control theory, admittedly without endorsing it, in both McNally and Cleveland. And I think the Second Circuit had a defensible way of doing this at the beginning, but it's become clear that it's an awkward fit with property fraud, as it's been traditionally understood. In particular, what we think the Second Circuit has done that's really its sort of fundamental conceptual mistake is instead of housing its idea that there needs to be some way in which the victim is not getting what it's bargained for in materiality, where we think it properly belongs and where the court put it in, for example, universal health services interpreting the standard definition of materiality in the particular context of contracting, it has added this tangible harm requirement that goes into the property element. Now, I think if you asked Congress, when it implemented the mail fraud statute, is use of property property, they would have said, yeah, you know, Blackstone says that it is, for those learned in Blackstone. But I think if you ask them, is use of property that is influenced by information about an economic decision that leads to tangible harm property, you're starting to gerrymander the definition of property beyond something that Congress would have understood. Counsel, given what you said about the right to control as, whatever you want to say, properly understood, or, you know, the Second Circuit has gotten a bum rap, but there's something here, we should go on and decide the question presented, which is whether or not the right to control theory is valid, right? Yeah, I agree that the court should obviously decide the question presented. I would urge the court that in doing so, I guess I would say a couple of things about that first. As we explain in our brief, we think the right to control theory properly cabined, and as it was applied in this case, does identify cases that are traditional property fraud. And I can get to why I think this particular conviction should be affirmed under the doctrine in a second. But I take great issue with the idea that cases like this are categorically out of the scope of property fraud, which, again, I don't really see much difference between this and a veteran's contracting preference benefits type case, where there's just a misrepresentation not about the services you're going to receive, not about how good they are, not about the price you're getting, but about the fact that somebody who owns a business is, in fact, a veteran of this nation's armed forces. Counsel, you said that you think the theory is still valid properly cabined. Was the theory properly cabined in the jury instructions? Yeah, I think if you took the jury instructions outside the context of this case, the jury instructions encapsulate a view of the right to control theory that could, in some cases, lead to overbroad results. However, the jury received a copy of the indictment in this case. If you look at Joint Appendix 27, paragraph 14 of the indictment, it makes clear that what the goal of the scheme here was was exactly what I said at the beginning, which was to get $750 million in government funds by rigging the bidding process and lying about it. So the theory would be properly cabined because the jury would, of course, not simply rely on the instructions, but also read the indictment and would properly resolve any difference between the two. Well, Your Honor, I think the instructions told the jury that it had to find that the property here was the right to control assets. And I think in certain cases the jury also had to find tangible harm. And I think that perhaps in certain cases even that might still go too far. But in the context of nearly every fraudulent inducement case, and certainly in this case, what the jury is going to find when it finds that the property was aimed at the use of control of assets in the context of two parties that are bargaining for a contract, the assets are going to be the contract funds. And then what you have is a species of fraud that has long existed at common law. Again, I take them to acknowledge the horse of a different name case, where what you want is a horse named James and you get a horse named Henry. But it also covers cases of pedigree fraud. I think the best examples are at pages – I'm sorry to interrupt, but I do admire the government's concession of error here, and I appreciate the candor with which you've made it. But given that we just took the case to resolve the right-to-control issue and not this other theory that you're attempting to develop about fraudulent inducement, even matters of equal value, why isn't the proper result here to reverse? Maybe you have an argument for vacate, but your very able friend on the other side makes a strong point that there was a superseding indictment here that seemed to rely expressly on the right-to-control theory, and the government didn't present this alternative view until Merritt's briefing in this court. Two answers to that, Your Honor. Just first, and this actually sort of is an additional answer to the Chief Justice's question. I do think it's important, if this court does decide to send this back or even reverse, how it reverses. And it is critically important to us for kinds of fraud that we prosecute all the time that the court not reach too broadly and impugn, for example, the veterans example I was giving. So how would you have us write that is my question. So I think what the court could say is that the kind of, sort of what I was saying to the Chief Justice, that the kind of property that is now at issue in these right-to-control cases, which is the right to control assets without assets necessarily in all cases as they would have been here confined to something that's properly understood as property, the right to control assets in a manner that doesn't expose the victim to tangible harm, isn't itself something that Congress would have conceived of as property and can be prone potentially to abuses. We don't think it was abused in this case, and that will go to the second part of your question. But I think that's really all that the court needs to say here. I wouldn't cast any question on — I think the question I'm trying to put my finger on is what we should do with this case. Okay. And Mr. Dreeben suggests that the appropriate judgment line is reversed and that the government shouldn't get another chance to reintroduce what it believes now to be the correct theory, fraudulent inducement I'll use as shorthand, because it took that out of the case in a superseding indictment and here we are many years later and it's the first time it appears as merits briefing before this court. So why isn't — or maybe you agree that the proper remedy in this case is reversal? No, I don't agree with that, Your Honor. So if we take the government's — if we're all agreed on the broader interest of the case and it's — the court's not going to relitigate Shaw and Nieder and introduce some sort of harm concept that it firmly rejected on page 467 of Shaw, and I can get to why that is, then in this particular case, I think it's different from the kinds of cases that Mr. Dreeben is citing. First of all, all they have made here is a sufficiency of the evidence challenge. And in a sufficiency of the evidence challenge, the question is we compare — tell us because of the way the government litigated this case up until its merits brief in this court. And again, just — if we all agree in a radical agreement that the Second Circuit misinterpreted the law, and if we're all in radical agreement that that's the only indictment before the jury was a right-to-control theory, why should the government have yet another chance to start all over again at this stage in this case? First of all, I think that this error could be analogized, although I will acknowledge that it's somewhat broader than the errors in those cases, like the errors in Nieder or Nostocchio — I guess I'm — I'm sorry to interrupt, but just — and I'll stop. This will be my last shot at it, but just take that superseding indictment, right? Why isn't that a firm waiver of the theories that you wish now to pursue? Your Honor, I think we clarified that we're proceeding under a right-to-control theory in order to comply with Second Circuit law, but I think if you read the indictment as a whole, the jury had it in front of it, and in the context of the only thing the jury could have found to satisfy the instructions and to find guilt on the relevant charges in this case, I don't think there has been anything close to some sort of switch of horses to continue the horse metaphors midstream here. And if I could get back to — What about Chiarella? Mr. Treven relied on that. How would you say that's different from what is going on here? Well, Your Honor, I think what's fundamentally different about that and every other case that they cite is, first of all, we think that the findings the jury made in this case under the right-to-control theory, even without really looking at the rest of the evidence except for things that are obvious and undisputed, is enough to show that this was actually property fraud. But for the reasons I've been stating about what the assets at issue as to the right-to-control actually were, I think that there's no way to read this case as introducing the kind of new theory you had in Chiarella where all of a sudden the victim of the fraud was different or something like in Dunn or the — were not the assets that the government now seems to be wanting to have this court recognize with respect to the right-to-control theory. I'm looking at the actual opinion in this case where I guess it was Judge Chen maybe wrote the opinion in the Second Circuit, and it says, withholding or inaccurate reporting of information that could impact on economic decisions deprived some person or entity of potentially valuable economic information. So it seems as though the asset that the Second Circuit was focused on was potentially valuable economic information. Am I wrong that that's what they thought the right-to-control theory was about? Well, Your Honor, I think if one looks at the entire opinion, which I know we all have, it's hard to come away from that. I mean, maybe you can pick out a specific sentence, but it's hard to come away from the opinion with any impression that the Second Circuit thought this case was about something fundamentally different than what I described. But you're describing the asset as the actual contract, as the money that was tendered in this transaction, and I didn't understand that to be what the right-to-control theory was about from the Second Circuit's perspective. So I guess I just don't understand. It seems as though you have reinterpreted right-to-control to be the new theory of fraudulent inducement in a way that the Second Circuit did not seem to put that theory forward, and that's what we thought we were taking in the context of this question presented. Well, Your Honor, I fully acknowledge that we're not thinking about this the same way as the Second Circuit, and for the reasons I was explaining to Justice Thomas, we do think the Second Circuit has developed a way of thinking about this that puts everything in the property element that's not the right way. And Mr. Dreeben says that's the way you argued the case below. So suddenly now we're at this stage with a reinterpretation by the government of what right-to-control means, and why isn't that sort of a forfeiture from the standpoint of if the court disagrees with you that right-to-control equals this transaction, or even if we don't, haven't you put forward a case that was based on the Second Circuit's conception? That's how it was argued to the jury. That's how the jury decided it. So why isn't Mr. Dreeben right that if we disagree with that conception of the theory, then we have to reverse? Well, Your Honor, the jury was instructed on the language of right-to-control assets, and both the jury's instructions and deliberations, as well as the Second Circuit's consideration of the case, occurred against a backdrop factual context where everyone understood the undisputed fact that what was really at issue here were lucrative government contracts. And that's why the Second Circuit goes on to reject the idea that there's any dichotomy between the bid-rigging process and the award of the actual contracts. If the theory were as broad as the sentence that Your Honor read suggested, there'd really be no need to do that because you deprived it of economic information simply by rigging the bid-rigging process. Instead, the Court makes clear, and this is at footnote 9 on page 22A of the petition appendix, that one of the reasons why this is fraud is because it was an essential element to the bargain, which I think maps directly onto what materiality would require in this context. And that's because it was incorporated into the notice to proceed that the parties entered into, which is a contract that committed L.P. Simonelli to spend $3 million in funds and the state to repay those funds. And then the notice to proceed was later incorporated into the final contract itself. Those are at Joint Appendix 125 and 134, respectively. So I think in the particular context of this case and fraudulent inducement cases generally, there's not going to be a lot of argument over whether there is underlying property at issue. I think where the Second Circuit's theory is problematic is both, as I said, in moving what really is part of the materiality inquiry in the particular context of contracting and moving that into the property element. And then potentially outside the context of fraudulent inducement cases, you could get circumstances where the Second Circuit's theory could be applied too broadly if you take loosely language like Justice Jackson appropriately just pointed out. So we don't object if what the Court wants to do, and frankly what we'd urge the Court to do, is to explain that the Second Circuit may not be thinking about this in the most precise way, in the most traditional way. What we would very much object to is something that suddenly erects the harm requirement that the Court firmly dispensed with in Shaw, where it not only rejected the harm requirement in that case, it adopted Judge Learned Hand's formulation that fraud can exist even where there's a quid pro quo. It pointed to Carpenter as an example of not requiring harm, and Carpenter is a case in which the victim, the Wall Street Journal, wasn't economically harmed at all. And third, it actually definitively resolves the false pretenses debate that Petitioner wants to have once again when it interprets false pretenses not to require this kind of harm. And if you want to look at examples of how the kind of thing I described as pedigree fraud was covered at common law, I'd encourage the Court to look at some of the turn-of-the-century cases at pages 753 to 754 of the Prosser Treatise, which is cited in our brief. One of those cases, Hedden v. Griffin, is a case by the Supreme Judicial Court of Massachusetts at a time when I believe Justice Holmes was on that court, although he didn't write the opinion. And in that case, the victim was tricked by the defendant into thinking that a bunch of his friends had bought a particular type of insurance, and, in fact, they liked it so much, they didn't quite buy the company, but they became members of the board of directors of the company. He himself bought the insurance, realized he'd been tricked, and the court acknowledged it was a perfectly valid insurance policy. He just didn't want it anymore because now he'd been tricked. It wasn't what he actually wanted. Instead, he was really depending, and it was an essential element to him, that the friends have bought it and that the friends were on the board of directors. And the only measure of damages in that case was the small premium that he had already paid, and he got a full refund and a rescission remedy. There are other examples of it, like the cases at pages 19 and 20 of our brief, where, for example, there's a misrepresentation to a buyer that a family member wanted the buyer to buy this particular item. That is not harm in a property interest, or if Petitioner would recharacterize it as such, I really think that we're slicing the conceptual bologna so thinly that it's transparent. Now, we could argue that again. I totally remain confused, okay? The core of the right-to-control theory is that prosecution is allowed to show a deprivation of property simply by showing a deprivation of economically valuable information. You've disavowed that, correct? Your Honor, I read simply that broadly, yes. But that's how the Second Circuit has read it, and you are not defending that, correct? If I could just be clear on what we're defending and what we're not. No, no, no, just answer my questions, okay? Are you defending the Second Circuit's view that a deprivation of economically valuable information is enough to prove fraud? Your Honor, if the definition started and stopped there, we do think that is an overbroad definition of property fraud. Okay. So you're saying that definition by the Second Circuit you're not defending? We are not defending that in all of its possible permutations. What we are defending here is how that has been applied and limited by the Second Circuit, in particular with its tangible harm requirement, and by its application in the context of fraudulent inducement cases like this one where there is... The charge here was, I'm reading directly from the charge, the victim's right to control the use of this asset is injured when it is deprived of potentially valuable economic information that it would consider valuable in deciding how to use its assets. Is that an accurate statement of the law? Your Honor, I think in the context of this... Don't give me a context. Is that an accurate statement of the law? That is not how we would... First of all, it did go on to talk about the tangible harm requirement. It says potentially valuable economic... I'm reading the charge. Information is how to use its assets is information that affects the victim's assessment of the benefits or burdens of a transaction or relates to the quality of goods or services received or the economic risks of the transaction. Is that an accurate statement of the law? See the jury charge. Your Honor, the reason... I mean, I think if you're taking some of these statements in isolation, I agree with you. I acknowledge to this court, I believe I've been acknowledging throughout, that is not the way that we would formulate it. If you're asking me instead whether we think it can identify cases that do meet the paradigm of property fraud and if you're asking me whether I think the jury could have convicted without finding traditional property fraud, then I'm going to defend both the instructions and the conviction. If you're asking me whether we would think that this is the kind of first principles right way to articulate it, I'm going to agree with Your Honor that the answer is no. I think really there are two main points I just want to emphasize here. One is that I do not think the court should cast any doubt on pedigree fraud or relitigate whether there's some harm requirement for property fraud generally. And then in the specific context of this case, I think if the court wants to do anything other than affirm, it should remand and let the Second Circuit sort out where we might be now. But if we do think that this conviction can be affirmed because the findings under the right to control theory do map on to property fraud in this context because there were no other assets we could be thinking about other than the $750 million. But Mr. Fagan, that's not how it works. I mean, the fact that it might map on to another theory of fraud isn't sufficient in a criminal case because doesn't the jury have to be actually instructed concerning the other theory. What worries me is the thought that the jury was instructed and Justice Sotomayor just read the instruction. The jury was instructed on this right to control theory and they convicted on that theory. If we determine that that theory is not consistent with the law in some way, I don't know that we can look at the evidence that was presented, especially given the fact that, as Mr. Dreeben says, the evidence was presented tailored to that theory. But even so, you seem to be suggesting that we can go back now and look at the evidence that was presented and say, oh, but there was enough for another theory that the jury wasn't instructed on and so we can sustain the conviction on that basis. Well, two points, Your Honor. One, as the case comes to this Court, and I'm without prejudice to whether they may have preserved the other challenges below, the case comes to this Court, it's just a pure sufficiency of the evidence challenge. And what that looks at is here are the elements of the statute properly construed and here are the facts of the case and do they map on to each other. How can you say that when they have charged throughout that the actual law that was being instructed was invalid? So if what the Court wants to say is that the jury instructions were in fact invalid, I think they forfeited a challenge like that right at the beginning of their petition search stage reply brief. But again, the Court could send this case back to the Second Circuit to sort out where we are now. But our submission in this Court, and the reason we think this Court can affirm, is that if the jury instructions could be characterized as essentially just misdescribing the elements of the crime, but in a way that wouldn't have allowed for the jury to find guilt without finding the properly understood from first principles elements of the crime, I don't think that the defendant has been deprived of anything. They point to evidence they would have introduced, but if you look at page 1002 of the Court of Appeals Appendix, the district court judge made clear that it was open to evidence that Simonelli actually could have done this better than anybody else. What it wasn't open to was evidence that Simonelli just gave it a quid pro quo, which is exactly the kind of thing that we don't think fits even under traditional property concepts. Thank you, Mr. Chief Justice. Justice Thomas? Justice Sotomayor, anything further? This is just a matter of curiosity, but let's take two things to be true. One is that the right to control one's own assets is not itself a property interest, a sufficient property interest under the statute. And the second is that in a case like this, the $750 million is a property interest under the statute. What I'm curious about is how did the Second Circuit, and I presume also the government, you must have argued these things to the Second Circuit. Why did they go down this road? How did it benefit anybody to conceive of the property in the case as the right to control assets rather than to conceive of the property in the case as the contract monies? Well, Your Honor, I can't quite speak to what everyone might have been thinking back when this originally began. But as I suggested, I think the Second Circuit might have gotten a little bit of a bad rap. The phrase right to control does appear in McNally where the court distinguishes the theory in that case from a right to control theory. I mean, whether it's a bad rap, there's no set of cases that people thought, oh, if we define the property interest this way, we can get to a certain set of cases that we couldn't get to if we defined the property interest as the contract monies. I don't think that was the original conception of it, Your Honor. I don't want to suggest the right to control theory only appeared after McNally. It does have its genesis in some pre-McNally cases. And I think it's, to be perfectly candid, Your Honor, an easier way for courts or potentially prosecutors just to get at some of these things because if you just say right to control or deprivation of economic information is enough, maybe it's a slightly easier route to prove to a jury, for example, or to affirm on those grounds. And it is possible for that theory to encompass too much. And I don't know that it's really actually been subject to very much abuse. I won't suggest that it hasn't been subject to abuse in some isolated cases, but I wouldn't submit that we would expect a lot of defendants. Okay. Thank you. You've answered the question. Yeah. Justice Gorsuch? Can I just pick up on Justice Kagan and Justice Jackson's question? Because my understanding is the government's been pushing this theory, and it's not you personally, but the government has been pushing this theory for several decades, and lots of people have been convicted under it. And I think the reason, as you just said, is it's easier to convict people under this incorrect articulation of the theory than under the correct articulation of the law. I think you just said that. And that's very problematic to think back on the various cases that have been there over the years. Now, I think you said to Justice Kagan you acknowledge that there are some cases like that. And then to come here in the bright light of this court for the government to then say, actually, you know, that theory doesn't hold up, again, appreciate the candor, but looking back on the government pushing this theory all those years is not an ideal scenario. Well, let me just make absolutely clear what I'm saying. I think this might have been an easier way in some cases to explain things to the jury. I'm not suggesting that, and frankly, I have a lot of sympathy for the government. I suppose I should, but I have a lot of sympathy for the government where you are faced with Second Circuit law, for example, But like in the Wallach case, going back to the Wallach case, and, you know, we can name the names. The government was not just some bystander here. Again, it's not you personally, so I'm just looking back at the scenario, and then it finally gets to this court like, oh, actually, that theory doesn't work. Your Honor, I suppose we could debate particular facts of particular cases, but Wallach in particular is a case in which the funds Yeah, there are various cases that we, and as we've explained in our brief, the core set of cases to which this has been applied, the overwhelming set of cases in which we've found Second Circuit decisions on it, have been fraudulent inducement cases like this that we could have brought on another theory. I think it's asking a lot of federal prosecutors to go to the Second Circuit, say, here's some language that this court has endorsed a couple of times, that they've never explicitly overruled, but we're going to tell you that this is wrong. We're going to start thinking about this case in a different way than you judges have been thinking about these kinds of cases, and we still think that it fundamentally covers all the cases that you judges think it covers, but here's a different way of thinking about it. On the word all in what you just said, I thought you had said to Justice Kagan you were acknowledging that actually it's not all. I apologize. I forget what I used all to modify in that sentence. That all the cases would have come out the same way if it had been properly charged. I apologize, Your Honor. I think we haven't found many cases, if any, that we think are really problematic. You gave a good answer there. It's fair, the Second Circuit. I understand that, so I'll stop there. Truth be told, I guess I was a little bit surprised to hear you say it's easier to convince a jury. I would have thought it's very easy to convince a jury that $750 million is property and not very easy to convince a jury that something called the right to control one's own assets is property. I find it a little bit of a weird way to think about property, and I suspect most juries would, too. So I guess, again, it's like why did anybody go down this road? Well, Your Honor, I think my answer to you, and I appreciate the chance to clarify it, was that it was an easier way to go with courts and juries. I think courts started to think of it this way first, and then once you have court instruction on this, it is a lot easier to simply, as I was suggesting to Justice Kavanaugh, go along with circuit law rather than to ask for a whole new de novo set of instructions. And so the indictment in this case, the instructions in this case, follow along with what the Second Circuit has been doing for 35 years. And I think as to how I suggested this might have been an easier way to think about it, I think to judges who articulated this theory first, I don't think it was juries or prosecutors necessarily. If you look at judicial opinions articulating this theory, they're taking language that was used in this court's own opinions in flagging a potentially still valid theory of fraud. Thank you. Justice Barrett. Mr. Fagan, my question is very practical. Coming to the end of your argument here, let's say that you lose on right to control, as stated by the Second Circuit on the question presented, you lose that, and you have two interests. One is to salvage the conviction in this case, and the other is to make sure that whatever we say about the right to control doesn't harm the government's long-term interests in prosecuting cases that might come around the edges of it. If we write the opinion this way and say the right to control theory is invalid because the right to control one's assets, being deprived of economically valuable information, deprives one of the right to control one's assets, and that's not a traditional property interest, or that it conflates the materiality and intent to defraud one of property elements, period, does that solve the government's problem about cases coming down the pike and are writing this too broadly? Your Honor, I think if I'm understanding correctly, I think if you write an opinion that suggests, I wouldn't say it so much conflates the intent to harm, sorry, there is no intent to harm element, the intent to defraud element and the materiality element. I would say it conflates the materiality element and the property element. It takes what's properly understood as the essential element requirement of materiality, which has deep roots, starting with Justice Story, in the particular context of fraudulent inducement and transmutes it into a tangible harm requirement that's attached to the property. I think if the Court makes clear that that's not the right way to go about this and that that's the way the Second Circuit has been going about this, as long as the Court makes clear that in doing so, the Second Circuit has been identifying a set of cases that may well meet the traditional elements of property fraud, that's not the right way. We don't even have to say that. We're just resolving this case, this QP. But if we resolve it the way, I mean, I don't think you and I are really far off in your description of the conflation here, but if we describe it that way and just say, period, and don't talk about alternate theories that might sustain the conviction in this case or any of the others that you're discussing with Justice Kavanaugh, that solves the government's long-term problem. I mean, when I say long-term problem, I mean concern about what harm precedent from this Court might do down the road. Well, I would, perhaps I could make a more modest request for an additional sentence there that would say we are not expressing any view as to whether, through application of those requirements, the Second Circuit has identified cases that do meet the traditional elements of property fraud as traditionally understood, without expressing an opinion on that one way or another, just to make sure the Court's not misunderstood as expressing some sort of negative opinion about that. Fair enough. Thanks. Justice Jackson? Can I just follow up by asking, if we had that additional sentence, would it be the government's position that it could then go back to the Second Circuit and perhaps even to the District Court and seek a conviction on the traditional basis, in this case? We do think that that would be open to us, Your Honor, although if they had preserved jury instruction issues that the Second Circuit believes are still open, which may well be the case, then I think if this Court were to remand, that would present different issues than the sufficiency issue that I was discussing with Your Honor earlier. But our submission of this Court is that on pure sufficiency grounds, the facts that are not only in the record, but under the findings that the jury necessarily made in this context, do fit the traditional elements of property fraud. So you're saying you would not have to retry, Mr. Simonelli? You could make the argument that on Justice Barrett's formulation, with the additional sentence that we're not touching traditional property, you could go back in this case and ask the lower courts for a conviction on the record that currently exists. Your Honor, let me make – I think that argument would – I think we would make that argument, and it would encompass two pieces, and you might disagree with us more on the second than on the first. The first is on a pure sufficiency of the evidence challenge. We do not think that there has been anything established, if the Court says what Justice Barrett and I were just discussing, that it's been established that these defendants did not commit property fraud, which is the essence of a sufficiency challenge. But isn't that the role of the jury? Doesn't the law need to be settled before it goes to the jury, so that the jury then makes a determination of whether or not the person is guilty? What I'm worried about is the suggestion that we can come now to this Court, essentially change what the legal requirements are, and then send it back and have you convict somebody under the new law, without a jury speaking to it. So I'd suggest that if that's Your Honor's instinct, the way to encapsulate that would be in the requirement of a new trial with new jury instructions, if these jury instructions warrant harmless error on these facts, not by saying that the sufficiency challenge succeeds, and what these defendants did, which would always have been considered fraud, is not, in fact, fraud. Thank you, counsel. Rebuttal, Mr. Grieben? Thank you, Mr. Chief Justice. What Mr. Fagan just said is that we raised a sufficiency case, but it should be turned into a jury instruction error case. I don't see how the government can maintain simultaneously that the right to control theory is invalid, and that somehow this case gets to be retried under its new legal theory. Now, as for Mr. Fagan's contention that the jury actually decided the elements of its new fraud theory, all the court has to do is look at the jury instructions on pages 60A to 62A of the petition appendix. First of all, the scheme was not described as one to obtain contract assets, which is what my friend now would have the scheme constitute. On page 60A, the scheme is described as a scheme to slant the development contract so that Mr. Simonelli would be selected as preferred developers. This was a transaction in which the first stage was selection of a developer. The second stage was negotiation of the actual riverbend contracts under which money would be paid. There was no money paid under the preferred developer contracts. They do not identify the kind of fraud in property proceeds that my friend now says is required. Then, when you come to the jury instructions themselves, as Justice Sotomayor read, they identify a different property interest. They identify the right to control rather than the contract proceeds as the assets. They omit the new essence of the bargain requirement, which the government submits, is the correct materiality standard. Had that been the standard at trial, we would have been permitted to argue that the riverbend contract is the only contract at issue. This preferred developer status and the competitive landscape that led to it was not part of that contract. It's barred by an integration clause, and it cannot be the basis for saying that it's the essence of the contract. The government also has a new by means of requirement that the acquisition of the money has to be by means of the fraud statement. Here, there's a break in the causal chain between the competitive situation to become a preferred developer and the hard-fought, arm's-length negotiation of the contract. And the government itself says that we would have that defense. At page 47 of the government's merits brief, it says that in many cases, and I'm quoting, where a victim receives fair value in a transaction, a misrepresentation will not have gone to an essential element of the bargain. It also seems it will not have been the circumstance by means of which the money was acquired. And the government relied on that theory of right to control, really answering the question that came up in the dialogue with Justices Kagan and Kavanaugh. It makes the government's ability to get a conviction much easier. This isn't an abstract question of whether the evidence looked at from hindsight years later in this court could conceivably have supported a valid theory of property fraud. We were denied again and again the right to admit evidence because the government relied on the right to control theory. We've detailed this at the petition reply brief at page 11, the Cagliaro's reply brief at page 9, and you can look at the petition appendix at 33A, where the Second Circuit says the defendants wanted to introduce evidence that this transaction was entirely fair as a way of refuting that it was designed to inflict a property harm. The court says, can't do that because of right to control. So I think that when you add all those things together, this is not a case in which the government can revive an abstract theory that has come to this court for the first time and says, if you look at the Second Circuit's doctrine differently, it really would satisfy the elements of a proper property fraud theory. They waived that. They waived it, as Justice Gorsuch pointed out, when they superseded the indictment to get rid of it, and they litigated this case throughout strategically to make their burden lighter to convict on right to control. I think at this point, the only proper judgment is a judgment of acquittal. This is not an abstract sufficiency of the evidence case. This is whether the evidence was sufficient to support the charges made in this indictment. That is the only legal basis on which the conviction could be sustained. If the right to control theory falls, so does the conviction. The court should reverse, should not remand. It should direct the entry of a judgment of acquittal. Thank you, counsel. Case is submitted.